[Crim. No. 3459. Second Dist., Div. Two.—June 11, 1941.]

THE PEOPLE, Respondent, v. JACK JAMES MULLEN, Appellant.

298

Gladys Towles Root for Appellant.

Earl Warren, Attorney-General, and Gilbert F. Nelson, Deputy Attorney-General, for Respondent.

MOORE, P. J.—Defendant appeals from an order denying his motion for a new trial after a judgment of conviction of the crime of making an assault with intent by force and violence to commit rape. The appeal is predicated upon the insufficiency of the evidence. There is no other issue. The only two witnesses who testified were the prosecuting witness and the defendant.

Disregarding the testimony of defendant, the record supporting the judgment is the testimony of the prosecutrix which in substance follows: On November 28, 1940, in response to an advertisement, I called at the appellant's dance studio where I first rehearsed a few dance numbers with him.

He wanted two girls, one for team work and one for solo work. He asked me to return the next day at 2 o'clock in the afternoon. On the following morning, by telephone, he offered to call at my home for me, which offer I declined but I did meet him at his studio according to appointment at 2 p. m.; he took me thence to the third floor of a building on Hill Street between Second and Third Streets. I waited in the hallway, while he arranged for a nearby room. The room procured was 30x25 feet and it contained no furniture but a piano. We rehearsed some tango numbers and lifts for the adagio, during which appellant hoisted me by the knee and ankle when I buckled up and came down upon him. He remarked that I was a little stiff and would have to limber up and that so far as he was concerned the team work was out. He suggested that I do solo work, which would require dancing partially nude. I replied that I disliked the idea of doing nude dances. He asked me to remove my dress that he might see my figure. I demurred; he insisted and I again stated I did not like nude dances. He then took hold of my dress and pulled it to my waist; I pushed his hand away. He then put his right hand on my breast and his left hand into my private parts while he stood only six inches away. He put his right arm around me and his fingers into my private parts. I begged him to let me go. His face looked peculiar and white. He released me but I feared to leave. He again grabbed me and pulled me to him on the bench. He drew me close and tried to kiss me. He held me so tight that he was forcing the breath out of me. He took me by the waist, pulled me toward him, forced me to sit next to him on a sort of bench and kept kissing me and putting his hand at my breast. In his struggle with me, my necklace was pressed down by his arm making a mark across my neck. He kept telling me something about loving me and just to stay there with him. After considerable time, he released me and told me to leave my coat there but I grabbed my coat, ran out, went down the elevator and went home. Defendant denied the occurrence of all of the offensive acts mentioned.

A man is guilty of rape by force and violence when he has carnal knowledge of a woman forcibly and against her will. When the man employs force upon a woman with intent to effect an act of copulation against her will notwithstanding

her resistance, he thereby commits an assault with intent to rape provided that his intent is coupled with the present means of accomplishing his purpose. (52 C. J. 1026.) If penetration be accomplished, it is rape; if not, it is the crime of assault with intent to rape by force. ▮ Whatever the extent and however rough the fondling of the woman, if her pursuer without fear of interruption voluntarily abandons his endeavor to ravish her sexual organs, then the force he employed was not an assault with intent to commit rape. ▮ The mere fact that he is garbed in the vestments of the male and displays the gesture of such is not sufficient to establish an intent upon his part to gratify his sexual desire against any opposition of the woman. The persuasions, caresses and embraces of the seducer are not evidences of a felonious intent. The man may generously employ all those arts with force, hoping to persuade, and yet finally abandon his prey. In such event he were guilty of nothing more than simple battery. (*Commonwealth* v. *Merrill,* 14 Gray (Mass.), 415, [77 Am. Dec. 336].)

▮ The facts proved by the prosecutrix in this case are not such as to point infallibly to an intent upon the part of the defendant to commit an act of rape, however lewd his behavior or however coarse his blandishments. It was 2 o'clock in the afternoon; they were in a room directly across the hall from the landlady, their door was unlocked and they were in close proximity to passers-by. Excepting the piano, there was no other furniture. At all times the two were within calling distance of the lady who delivered to defendant the key for entrance into the spacious room. Never did defendant there say that he desired to gratify his sexual desires; he never exposed his person or in any manner pantomimed the sexual act.

Nothing in the testimony indicates that defendant intended to ravish the woman "at all events and notwithstanding any resistance on her part." Quoting an Iowa case, the Supreme Court once said: "The assault must have been made with intent to commit a rape, notwithstanding all possible resistance that could be made." (*People* v. *Fleming,* 94 Cal. 308, 311 [29 Pac. 647].) In the present case, as in the Fleming case, it might justifiably be inferred from the testimony of the prosecutrix that "defendant desired to have sexual intercourse with her, and that he committed either

an assault or a battery upon her of a technical character at least, while engaged in his solicitation and blandishments but these things may all be true and be entirely foreign to any intention on his part to commit the crime of rape by the use of force to the extent of overcoming all resistance she might offer.'' *Ibid.* The fact that the defendant may have been guilty of lewdness, indecency and even of lasciviousness would not be sufficient to warrant the finding that he was guilty of an assault with intent to commit rape. Before such a finding can be justified, it must appear beyond a reasonable doubt that the acts of the defendant were such as to indicate clearly a felonious intent to ravish the woman notwithstanding her most violent resistance.

The prosecutrix did not suffer a duress. Her testimony that she feared he would choke her was of little value in view of the fact that all of the behavior of the defendant was described by her. At no time did he make any threat of personal violence. The finding of intent to commit rape is the *sine qua non* of a judgment of guilty of an assault with intent to commit rape, i. e., to befoul the body of a woman against any physical opposition she might offer. Unless the defendant indicated a resolution to use all his force to commit rape, then there is no satisfactory proof of such intent. Nothing points to such fixed purpose. She was small and illy equipped to cope with so formidable an adversary. He was large and possessed sufficient physical power to have accomplished his purpose. The featherless biped that is animated by a firm purpose to exploit his own depraved desires against a helpless woman has an instinctive fear of apprehension joined usually with an instinctive cunning to devise his safety. The presence of neither is suggested by the conduct of defendant in escorting the prosecutrix to the heart of a great city and into a building that is frequented by men and women bent upon artistic pursuits. But aside from all other considerations, when the prosecutrix had testified that, after her feeble resistance, unhindered and alone, she walked forth from the dance room without molestation, she spoke the words that cleared defendant of a felony.

The subject of assault with intent to commit rape has been before the appellate courts on many occasions. In most of the cases the facts were such as to warrant the inference that the defendant had the intent to commit rape at all events

regardless of all the prosecutrix could do to prevent it. In those cases, the appellate court had nothing to consider except whether the evidence was sufficient to warrant the inference drawn by the jury and the trial court. (*People* v. *Moore*, 155 Cal. 237 [100 Pac. 688]; *People* v. *Norrington*, 55 Cal. App. 103 [202 Pac. 932]; *People* v. *Onessimo*, 65 Cal. App. 341 [224 Pac. 101]; *People* v. *Jones*, 112 Cal. App. 68 [296 Pac. 317], and the authorities cited by them.) In each of those cases the proof clearly established the attempt to effectuate carnal intercourse with terrorism and violence, coarse language and under cover of darkness (*People* v. *Moore*) and further by making advanced preparations (*People* v. *Jones*) and by exposing the sexual organs (*People* v. *Onessimo*) and by committing the nameless act against the body of his victim (*People* v. *Norrington*). None of them supports the judgment before us. Each defendant was prevented from executing his intent by an agency other than his victim.

The order denying the motion for a new trial is reversed and it is ordered that defendant be discharged from custody.

Wood, J., and McComb, J., concurred.