[Crim. No. 4695. Second Dist., Div. Two. Feb. 18, 1952.]

THE PEOPLE, Respondent, v. GLEN LaVERNE STEWART, Appellant.

Gladys Towles Root for Appellant.

Edmund G. Brown, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellant was convicted of three felonies, namely, assault with intent to commit rape; assault by means of force likely to produce great bodily injury; attempt to violate section 288a of the Penal Code. He demands a reversal of the judgment on three grounds, to wit: (1) denying appellant complete impeachment of the complaining witness; (2) refusing to give certain requested instructions; (3) insufficiency of the evidence to support the judgment.

The prosecutrix, a young woman 26 years of age, had lived in Los Angeles for some five months, having emigrated from Quebec. She had engaged to work as a nurse's aide at a hospital. She made the acquaintance of appellant through a friend about two weeks prior to the episode involved. At the first meeting she promised to accompany him on an outing on the evening of March 9th.

On the latter date, at his suggestion, they visited a cocktail bar where each had a drink of liquor. In order to obtain eatables they visited another cocktail bar where they drank again without eating. She expressed a desire to go home. He agreed to comply with her wishes but stated that he would like to visit the "Country Club." Notwithstanding her opposition he was persistent and promised not to be too long. At the club they drank again without eating. She then repeated her wish to terminate their festivities to which he orally assented. It was 2 o'clock in the morning. As they drove along

she suddenly realized that they were traveling in a strange vicinity. He told her it was all right as he proceeded up Laurel Canyon to the Hollywood Hills. He stopped his car where there was no building in close proximity. She argued that she did not wish to delay there and begged him to return her to her apartment. He promised to do so but immediately began kissing her. After having engaged in osculations and while holding her, he insisted upon an act of sexual intercourse. She resisted his advances, but despite all her efforts he extended his hand under her dress and up to her waist. When she prevented his removing her panties, he hit her in the face, became violent and told her to lie down. When she refused, he choked her. As he pushed her down on the seat, he exposed his private parts. He repeatedly told her to submit or he would kill her. In the struggle against her resistance he succeeded in getting one of his knees between hers and tried to spread her legs while she unsuccessfully attempted to open the door. With his genitals still exposed he demanded that she do the act of fellatio. When she refused he hit her in the ribs and pushed her head down to his reproductive organs. She tried again to escape from the car but he closed the door and again choked her. He pushed her body down flat on the seat and her leg up to it. At that time her right tibia was broken. When she sat up again he hit her in the nose with his shoe. When she recovered from the fainting that ensued she tried to escape but when she put her foot on the ground she could bear no weight upon it. As he put her back into the car she begged him to take her home. On the way he stopped at a drive-in to get her coffee. While he was out of the automobile she managed to reach the kitchen and there asked a man to call the police. When the officers arrived, appellant had departed.

The officers discovered bruises on her nose, on the side of her face and on her arms. She had suffered multiple contusions about the body, the head and the extremities, and black and blue marks were over her hands. The left side of her chest, her legs and ankles were contused and a swelling was found near the right knee. X rays showed a fracture of the tibia and her tenth rib. Such injuries necessitated her hospitalization.

The officers discovered appellant at his residence about 7:15 a. m. In reply to their inquiries he said nothing out of the usual had happened; that it was a regular evening. He admitted he had slapped the prosecutrix several times but denied that he had done any damage by hitting her. When they told

him of her statements that he had tried to make her submit to
carnal intercourse, his reply was that he had just gone out
with her and had taken her up to the hills; that he had tried
"to lay her" but had failed; that he had a little bit of trouble
but did not think it was too much. When asked if he treated
all his girl friends that way, he replied that he did not; that
ordinarily he was quite a lover and that he really didn't have
too much difficulty. He explained that he left her at the
drive-in; that he saw her stagger into the kitchen and ask
someone to call the police. He denied that he had put his
hands under her dress; said that when she fell out of the car
he picked her up and put her on the seat and she began talking
in a foreign language and hit him on the chest; he then shook
her and hit her twice; when she quieted down he started to
take her home, but did not hit her with his fist or in her ribs
or on the nose; denied ever having been on top of her or hav-
ing his knees across her legs on one knee between her legs.
He denied having choked her although he admitted that when
they started on the outing she did not have any bruises or
injuries about her face. Later he did see a bruise on her cheek
at the drive-in. Also, he knew that when driving up Laurel
Canyon he was going away from the direction of her home.

### No Error in Ruling

 Appellant contends that he was prejudiced by the
court's ruling in refusing to permit him to pursue the im-
peachment of the prosecutrix with respect to the position of
his knees. In order that the situation may be clearly under-
stood we present on the margin that portion of the transcript
which includes the questions and the rulings of the court.[1]

---

[1]"Q. But what I am trying to find out, at the time, after the defend-
ant had choked you and you again sat in an upright position in
the seat, you say the defendant had his knees over you at that time?
A. Yes.

"Q. Now, how were the defendant's knees over you at that time?
A. He had them on each side of myself.

"Q. On each side of you? A. Yes.

"Q. Therefore his knees were on the seat on each side of you, is
that correct? A. Yes."

"Were those questions asked of you and were those answers given
by you at the preliminary hearing?

"A. That's the best I consider. I was too frightened to remember
all of the things, the positions.

"Q. You mean by that that at the preliminary hearing you were
frightened and the answers you gave there were not correct?

"Mr. Carr: Wait a minute, that isn't her testimony.

"The Court: That isn't what she said.

"Mr. Haley: That's what I understood her to say.

No error is found in the court's ruling. If appellant's attempt was to show a contradiction between the prosecutrix' testimony at the trial and her testimony at the preliminary examination, his purpose was achieved when she admitted that what she said at the preliminary was true. Further inquiry into the same subject could have served no purpose. (Code Civ. Proc., § 2052; *People* v. *Kennedy*, 21 Cal.App.2d 185, 199 [69 P.2d 224]; *People* v. *Agullana*, 4 Cal.App.2d 34, 37 [40 P.2d 848].) In telling counsel that the witness had answered the question, the court acted as required by section

"THE COURT: She said she was frightened. Let's take it this way: Miss Fortier, first you remember when you had that other hearing, did you say that, what has just been read?

"A. Yes.

"THE COURT: Now, you mentioned something about being frightened: you mean you were frightened at the time of the hearing, or at the time it happened?

"A. I was frightened at the time, everything happening.

"MR. HALEY: All right.

"Q. Now then, will you tell us now whether or not the testimony you gave at the preliminary hearing was correct, or whether the testimony you gave here Friday was correct?

"THE COURT: I will sustain an objection to that. That's assuming that one of them is incorrect.

"MR. HALEY: All right.

"THE COURT: I will ask the witness a question for the purpose of the record:

"What you said down in the court there, this part just read, is that the way it was, as best you can remember it now?

"THE WITNESS: Yes, your Honor.

"MR. CARR: That wasn't a Court, your Honor, that was over at the Queen of the Angels Hospital, they had a bedside hearing.

"THE COURT: It was still a court.

"MR. HALEY: I take it the testimony I just read to you is the correct testimony, is that correct?

"THE COURT: The witness answered—unless you doubt the Court's question.

"MR. HALEY: No, if your Honor pleases, I don't. I don't believe the young lady completely understands the Court's question, or at least she doesn't completely give an answer. All I am asking now——

"THE COURT: If there is any conflict there you can argue it to the jury. She has admitted making the statement.

"MR. HALEY: Yes.

"THE COURT: Now, it is only when a witness denies a statement we go into the question of explanations. If the witness desires to make an explanation she would say; at the present time the witness hasn't indicated any desire to make a statement. She said it is the way it happened.

"MR. HALEY: Yes.

"THE COURT: I think we have to take into consideration the manner of expression, Mr. Haley. That's the basis of the Court's ruling. People don't always express themselves perfectly—in fact, the most difficult thing in the world is to express the idea in the English language with absolute accuracy.

"MR. HALEY: Very well."

1044 of the Penal Code. ■ Whereas section 2052 of the Code of Civil Procedure permits a witness to rehabilitate himself by his explanations the impeaching party has not the same privilege to pursue the matter after having received a definite and final answer to his impeaching question. (*People* v. *Ah Wing*, 35 Cal.App. 218, 221 [169 P. 402].)

■ As a matter of fact, the prosecutrix was not impeached by her testimony at the preliminary trial. While she had there testified that his knees straddled her body, her direct testimony at the trial indicates that appellant was in several positions during the course of the struggle and that he did have his knees astride her or on each side of her and that he subsequently moved to her left side and had his knees on the seat. It appears at another place that at one time he placed one of his knees between her legs in order to push one leg off the seat. Clearly there was no substantial inconsistency between the statements of the prosecutrix at the main trial and at the preliminary.

■ Appellant further assigns the conduct of the judge as prejudicial, asserting that his Honor's remarks carried the impression to the jury that there was no conflict and that if there was it came about only by reason of the inability of the witness properly to express herself in clear English. The court advised counsel that the witness had admitted the correctness of the prior statement and by reason thereof the matter remained as one for argument to the jury as to whether there was any inconsistency in the witness' testimony at the trial and at the preliminary. Thereafter the court instructed the jury fully upon the subject of impeachment. Even if the trial judge had been commenting on the evidence and the credibility of the prosecutrix his behavior was squarely in accordance with article VI, section 19 of the Constitution, and sections 1093(6) and 1127 of the Penal Code which specifically permit such comment by the trial judge as he may deem "necessary for the proper determination of the case."

■ And if the judge had exceeded the bounds of propriety in discussing the testimony of the witness, it was incumbent upon appellant to assign such remarks as misconduct and to request an instruction to disregard the offensive words. A party is not privileged to sit silent in the presence of statements deemed detrimental to his interest and rely for salvation upon an appeal. It is his duty to give the trial judge the opportunity to correct any error that he might have made in the course of a trial. Having failed to do so, his demands for

reversal by reason of such error will avail nothing. (*Ward* v. *De Martini,* 108 Cal.App. 745, 751 [292 P. 192].) Moreover, the error will not give ground for reversal unless the record discloses that it resulted in a miscarriage of justice. (Const., art. VI, § 4½.)

### No Error in Refusing Instructions

■ Appellant's contention is that the court prejudiced him by its refusal to instruct the jury that the crime of assault with intent to commit rape necessarily includes the crime of simple assault and that the crime of assault by means of force likely to produce great bodily injury necessarily includes the crime of simple assault.[2] There was no justification for such instruction. Where the evidence is such as to make it clear that if the accused is guilty at all, he is guilty of the higher offense of which he is charged, a court may properly refuse to instruct on simple assault. (*People* v. *McCoy,* 25 Cal.2d 177, 187 [153 P.2d 315].) In his brief appellant says "he admitted slapping the complaining witness for the purpose of bringing her out of her hysteria. He denied hitting her with his fist and he denied hitting her with his shoe." As to the events which occurred prior to the time prosecutrix left the car there was a direct conflict. Appellant had emphatically denied that any of the events related by the prosecutrix had taken place and therefore as to his conduct he was either guilty as charged or he was not guilty of any crime. Therefore, the refusal of the instruction on simple assault was proper. (*People* v. *Thomas,* 100 Cal.App. 82, 84 [279 P. 826].) A refusal to give the instruction was in fact favorable to appellant for the reason that if the jury had chosen to disbelieve the stories of prosecutrix they would necessarily have found appellant not guilty of any crime. (*People* v. *Lopez,* 135 Cal. 23, 25 [66 P. 965].)

---

[2]"Defendant's Requested Jury Instruction No. 1

"You are instructed that you may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, if in your judgment the evidence supports such a verdict under my instructions.

"To enable you to apply the foregoing instruction, if your findings of fact requires you to do so, I instruct you that the offense of assault with intent to commit rape of which defendant is charged in Count 1 of the information, necessarily includes the crime of simple assault, and the offense of assault by means of force likely to produce great bodily injury of which the defendant is charged in Count 2 of the information, necessarily includes the crime of simple assault."

"Refused"

*People* v. *Burns,* 88 Cal.App.2d 867 [200 P.2d 134], does not avail appellant. The instruction was appropriate there. Two separate assaults occurred.[3] The wife testified that the more serious blow was struck by her husband in the evening. In the morning he hit her with his slipper. Husband admitted spanking his wife mildly with his slipper but denied having assaulted his wife in the evening. It was properly held error to refuse an instruction on simple assault. As to the morning episode, the jury could have found from the testimony of both parties that husband was guilty of only a simple assault. From all the evidence, it could have been found that no assault took place in the evening. Therefore the situation was not one where the defendant was either guilty of a felony or not guilty at all; hence the instruction should have been given as requested by Burns. In the case at bar appellant contradicted the prosecutrix. If the testimony of the girl was true, appellant was guilty as charged. Nothing she said would have warranted the finding of a simple assault. Had the jury adopted appellant's testimony he would have been acquitted outright. The battery he admitted was not mentioned by prosecutrix and it occurred after the assaults and struggles she had described. There was, therefore, no simple assault involved in the incidents narrated by prosecutrix. It would have been error for the court to give the instruction requested, since there was no simple assault upon the young woman, but only a felonious attack, a beating of her body for the purpose of accomplishing rape.

No Error in Refusing Appellant's Instruction No. 2

Appellant also requested the court to read the instruction[4] set out on the margin below. ▮ The refusal was proper.

---

[3]The husband was accused under section 273d of the Penal Code.

[4]"'The specific intent in the charge of assault with intent to commit rape, must be such that the assault must have been made with intent to commit rape, notwithstanding all possible resistance that could be made.

"'The mere fact that a person is garbed in the vestments of the male and uses persuasion, caresses and embraces, is not evidence of a felonious intent. The man may generously employ all those arts hoping to persuade and yet finally abandon the attempt.

"'There may be in this case evidence that the defendant may have been guilty of lewdness, indecency and even lasciviousness, such evidence would not be sufficient to warrant the finding that he was guilty of an assault with intent to commit rape. Before such a finding can be justified, it must appear beyond a reasonable doubt that the acts of the defendant were such as to indicate clearly a felonious intent to ravish the woman, notwithstanding her most violent resistance.'"

The entire subject was fairly and generously covered by other instructions. By reason thereof the refusal was on that ground alone correct. ▮ The accused is not entitled, as a matter of right, to prescribe the form of an instruction. (*People* v. *McKenna*, 11 Cal.2d 327, 337 [79 P.2d 1065] ; *People* v. *Walker*, 99 Cal.App.2d 238, 244 [221 P.2d 287] ; *People* v. *Shah*, 91 Cal.App.2d 722, 725 [205 P.2d 1077].) Moreover, the instruction is erroneous in its inaccurate statement of the law. It would have had the court direct the jury that they must find beyond a reasonable doubt that the defendant's acts indicated clearly a felonious intent to ravish his victim, "notwithstanding her most violent resistance." Such an instruction is a bold argument, embodying familiar legal principles and certain established facts but beginning and ending with a rank sophistry. ▮ A woman is not required when in the clutches of a rapist to resist with violence. The extent to which she must resist his advances is for the victim only to determine. She is required to go no further than is necessary to make manifest her unwillingness to yield to the attack. (*People* v. *Tollack*, 105 Cal.App.2d 169, 171 [233 P.2d 121] ; *People* v. *Blankenship*, 103 Cal.App.2d 60, 67 [228 P.2d 835].) ▮ The crime is accomplished if at any moment during the struggle the accused intends to use such force as may be necessary to gratify his lustful concupiscence against the will of his victim. (*People* v. *Meichtry*, 37 Cal.2d 385, 388 [231 P.2d 847].) ▮ The importance of the woman's resistance to the rapist inheres in (1) his intent to use force and (2) her nonconsent; but the crime does not hinge upon the woman's "utmost exertion." (*People* v. *Norrington*, 55 Cal.App. 103, 110 [202 P. 932].) ▮ At any rate, the jury is entitled to determine the ultimate facts of the fiend's intent and the extent of the victim's resistance without a misdirection by the court. ▮ The instruction was properly rejected for the further reason that it implies that the only acts of which appellant was guilty were caresses, embraces and persuasion or lewdness, indecency and lasciviousness. The vices named came into the orbit of appellant's conduct incidentally. If he kissed or embraced her, as he contends, and innocently laid his hand upon her knees, it was only as part of his initiatory undertaking. But as she unfolded the story he exercised force immediately upon her refusal to yield. His lewd and lascivious acts as she reported them were evidence of his intent to rape and could not reasonably have been disassociated from his employment of force to achieve his desires. In view of the

two .divergent narratives given in testimony, to read the proposed instruction would have been gross error. Appellant's reference to *People* v. *Mullen,* 45 Cal.App.2d 297 [114 P.2d 11], is of no avail. That decision has been too often distinguished to require extended comment. Suffice it to say, the court there correctly determined that the facts involved did not constitute an assault with intent to rape. The acts of Mullen were as a zephyr contrasted with the violent storm of Stewart.

### EVIDENCE SUFFICIENT AS TO COUNT I

That the established facts prove the crime charged in the first count is patent to a casual observer. After giving her liquor and transporting her to a dark place in Laurel Canyon, he stopped his conveyance at a distance from human habitation. His first proposal was that she engage with him in the sexual act. His ensuing conduct has been described above. It culminated with his slapping, hitting and choking her and his threats to kill her. He hit her face with his shoe, fractured her rib, and broke her tibia at the knee. That she resisted to an ultimate success is no credit to appellant. When a man in a dark isolated place demands sex of a woman and chokes and beats her for resisting his demands and abandons his efforts only after disabling her, little argument is required to convince a disinterested person of his criminal aims. At least the finding of a jury and the trial judge is the final answer. (*People* v. *Meichtry,* 37 Cal.2d 385, 388 [231 P.2d 847] ; *People* v. *Lutes,* 79 Cal.App.2d 233, 236 [179 P.2d 815] ; *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) The authorities cited by appellant for the purpose of proving that the evidence is insufficient as a matter of law to establish an assault with intent to commit rape (*People* v. *Mullen, supra*; *People* v. *Manchego,* 80 Cal. 306 [22 P. 223] ; *People* v. *Brown,* 47 Cal. 447) are readily distinguishable.

### EVIDENCE SUFFICIENT AS TO COUNT III

Finally, it is contended that the proof failed to establish the crime of violating section 288a of the Penal Code for the reason that appellant could have effectuated his purpose ''with little difficulty'' at a time when the girl was disabled. His guilt is nonetheless because he was not inhibited by an ''extraneous circumstance.'' He certainly had the intent and made an attempt to consummate his purpose. It would be puerile to hold that by exposing himself and pressing prosecutrix' head toward his pelvic area he was merely making

preparations. Having declared his desire but little movement on his part was required to constitute his conduct an attempt. His design being manifest, his acts in furtherance thereof completed the crime. He twice commanded her to engage in the act of perversion and attempted to enforce his order by physical force. Merely because he failed to gain compliance and desisted only because of the woman's illness or resistance, it is not thereby established that he voluntarily abandoned his criminal aim. His offense was then already complete. (*People* v. *Gibson*, 94 Cal.App.2d 468, 470 [210 P.2d 747]; *People* v. *Fiegelman*, 33 Cal.App.2d 100, 105 [91 P.2d 156].) Under the evidence it would have been a valid finding if the jury had determined that appellant desisted by reason of the girl's violent resistance or of appellant's fear that his blows had fatally injured her. (*People* v. *Lutes*, 79 Cal.App.2d 233, 237 [179 P.2d 815].)

Judgment affirmed.

McComb, J., and Fox, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 13, 1952. Carter, J., was of the opinion that the petition should be granted.