[Crim. No. 1024.   Fourth Dist.   Mar. 17, 1955.]

THE PEOPLE, Respondent, v. ROBERT B. NELSON et al., Appellants.

572

Claude B. Brown for Appellants.

Edmund G. Brown, Attorney General, and Victor A. Gables, Deputy Attorney General, for Respondent.

BARNARD, P. J.—This is an appeal from a conviction on a charge of assault with intent to commit rape.

The defendants Nelson, Lewis and Fells were charged in Count I with forcible rape upon one Guadalupe Velesquez, and in Count II with assault with intent to commit rape upon Maria Velesquez. Nelson was also charged with two prior convictions. He admitted the priors, and all three defendants pleaded not guilty to both counts. A jury found Nelson and Lewis guilty and Fells not guilty on the first count, and found all three guilty on the second count.

Motions for a new trial were denied as to each defendant. Nelson was sentenced on each count to run consecutively; Lewis was sentenced on each count to run concurrently; and Fells was given three years' probation, the first nine months to be in the custody of the sheriff. Nelson and Lewis appealed from the judgment, and from an order denying their motion for a new trial. Fells appealed from the order denying his motion for a new trial. Nelson and Lewis later abandoned their appeal with respect to the first count, and this appeal is presented with respect to the second count only.

About 4 a. m. on June 6, 1954, the two women involved, who were sisters, were waiting for a bus on Highway 101 near the Mexican border. The appellants, coming from Tijuana, in a four-door sedan stopped and offered them a ride, which they refused. Lewis got out of the car, grabbed Maria and threw her on the lap of Fells, who was seated in the rear seat. Another man, asleep in a drunken condition, occupied all of the rear seat except the part occupied

by Fells. Lewis then forced Guadalupe into the front seat between himself and the driver, Nelson. The car was driven two or three miles and stopped near the road in a dark place. During the ride Guadalupe was choked by Lewis to keep her from screaming. Maria screamed when she was thrown in the back seat, during the ride, and after they stopped. Fells held Maria on his lap by keeping both arms around her waist. She succeeded in opening the rear door while the car was in motion and Fells closed it. During the ride, and after the car stopped, Fells fondled Maria's breasts and succeeded in unbuttoning the button above the zipper on her slacks, but was unsuccessful in a number of attempts to unzip her slacks because she pulled his hands away and bit him. She tried to get out when the car stopped but was prevented from doing so.

When the car stopped Lewis got out and guarded the rear door to keep Maria from getting out. Nelson knocked Guadalupe down, overcame her struggles, and succeeded in taking off her slacks and panties, tearing them in the process. He then accomplished an act of intercourse with her while she was still struggling. Lewis, who already had his pants unbuttoned, then started to do the same thing. At that time a highway patrolman arrived on the scene. He observed Guadalupe leaning on the car door, crying for help and she was naked from the waist down. The officer radioed for help and kept the appellants in line, with a pistol in his hand, until another officer arrived a few minutes later. He then observed Guadalupe holding her stomach and retching, while Maria was crying and holding up her sister.

The defendants admitted picking up these women, claimed they had gotten into the car voluntarily in response to an offer of a ride, and denied that they had molested the women in any way. Nelson testified that he stopped the car after he discovered that the women were unable to speak English, and that he was trying to get them out of the car when the officer arrived. Lewis and Fells both testified that they went to sleep immediately after the women got in the car. Lewis testified that he awakened when the car stopped, and Nelson was trying to get the women out of the car. Fells testified that when he woke up the officers were there.

The appellants contend that the evidence was not sufficient to sustain the verdict as to the second count in that it did not demonstrate that Fells had an intent to rape Maria. It is argued that the fact that Maria was placed on the lap

of Fells was without significance since there was no other place for her to sit in the back seat; that while Fells fondled Maria he did not place his hands on her body under her clothes; that Maria was not prevented from screaming and was not struck or choked; that she was not threatened by Fells but was prevented from getting out of the car by Lewis; that Fells prevented her from leaving the car, when she opened the door, because she would have been injured if she had left the car while it was moving; that Maria was still sitting on Fells' lap when the officer arrived; that the intent of Fells must be determined from his act and conduct; and that there is no evidence that he intended to use force in carrying out his purpose. It is argued that the insufficiency of the evidence as to the second count clearly appears from the rules established in the cases of *People* v. *Mullen,* 45 Cal.App.2d 297 [114 P.2d 11] ; *People* v. *Manchego,* 80 Cal. 306 [22 P. 223] ; and *People* v. *Fleming,* 94 Cal. 308 [29 P. 647]. Relying on *People* v. *Mullen,* it is argued that: ''Unless the defendant indicated a resolution to use all his force to commit rape, then there is no satisfactory proof of such intent. The assault must have been made with intent to commit a rape, notwithstanding all possible resistance that could be made.''

The old rule referred to in *People* v. *Mullen,* has been considerably modified in many modern cases. Moreover, the facts in that case were quite different from those involved here. In that case, the incident occurred in daylight in a business building and with other people within call; there was no duress; there was no violence or threat of violence; and the efforts of the party charged were voluntarily abandoned without any fear of interruption. The incident here in question occurred in a dark spot at night, there was ample evidence of duress and violence, and the efforts of the appellants were not voluntarily abandoned.

The acts and conduct of the appellants sufficiently disclosed the required intent. One rape had already taken place, another was about to begin, and the evidence justifies the inference that there was an intent to rape Maria, which was frustrated by the opportune arrival of the officer. The evidence discloses that all three appellants were acting in unison with a common purpose; and indicates that the assault upon Maria was with the intent of committing rape upon her, and that all three were guilty as principals. (*People* v. *Griffin,* 106 Cal.App.2d 531 [235 P.2d 424] ; *People* v. *Le-*

*Grant,* 76 Cal.App.2d 148 [172 P.2d 554] ; *People* v. *Mummert,* 57 Cal.App.2d 849 [135 P.2d 665].) Appellants' unity of purpose was manifest from their obvious approval and co-operation throughout the entire incident. While one rape was completed, and another was being started, Maria was held in duress, still screaming and resisting the advances of Fells, and none of the appellants showed the slightest concern for her protests. The evidence is sufficient to support the verdicts as to the second count. (*People* v. *Burdette,* 78 Cal.App.2d 591 [178 P.2d 8].)

It is further contended that the court erred in refusing to give two instructions requested by the appellants, which were refused as covered. The first of these instructions reads: ''Whatever the extent and however rough the fondling of a woman, if her pursuer without fear of interruption voluntarily abandons his endeavor to ravish her sexual organs, then the force he employed was not an assault with intent to commit rape.''

The second one reads: ''In order to establish the crime of assault with intent to commit rape, it must be proved that the defendant had the intent to commit rape at all events regardless of all the prosecutrix could do to prevent it.''

It is argued that while the instructions which were given relating to the second count, correctly stated the law in general, they failed to inform the jury that the fondling of a woman does not, in itself, constitute an assault with an intent to commit rape, and that it must be proved that a defendant had the intent to commit rape at all events regardless of all the prosecutrix could do to prevent it. ▪ Where all phases of the law are fully covered by other instructions it is not error to refuse another instruction covering the same matter in different language. (*People* v. *Eggers,* 30 Cal.2d 676 [185 P.2d 1].) ▪ A further consideration with respect to the first of these instructions is that there was no evidence, and no contention had been made, that these parties voluntarily abandoned their attempt without fear of interruption. The evidence shows that they were interrupted in the midst of it, and the appellants made no claim of abandonment but testified to the effect that they had not begun any attempt and had not molested the women in any way. ▪ The second instruction incorrectly stated the law and would have told the jury that to establish a crime it must be proved that there was an intent to commit rape at all events, regardless of all the victim could do to prevent it. The instruction

in that form should not have been given. (*People* v. *Stewart,* 109 Cal.App.2d 334 [240 P.2d 704].)

The judgment, and the order denying a new trial as to all appellants are affirmed.

Griffin, J., and Mussell, J., concurred.