[Crim. No. 1344.   Fourth Dist.   Jan. 23, 1958.]

THE PEOPLE, Respondent, v. WILLIAM HOUSE, Appellant.

Buttermore & Lightner, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WAITE, J. pro tem.*—Defendant was charged with violation of section 220 of the Penal Code, assault with intent to commit rape. The information also alleged two prior felony convictions, both of which were denied at the time of plea but admitted by defendant outside the presence of the jury at the commencement of the trial. The jury found defendant

---

*Assigned by Chairman of Judicial Council.

guilty as charged, a motion for a new trial was denied, and defendant was sentenced to state prison. Judgment was pronounced on September 5, 1957, and on September 6, 1957, defendant's counsel filed notice of appeal from the judgment and from the order denying the motion for a new trial. On September 12, 1957, defendant, acting in his own behalf, filed a second notice of appeal in which he appeals only from the judgment of conviction. Upon this state of the record we consider this as an appeal from the judgment and from the order denying the motion for a new trial.

Defendant urges two grounds for reversal: (1) That the evidence is insufficient to sustain the conviction of assault with intent to commit rape; and (2) That the court erred in failing to give a cautionary instruction regarding the testimony of the prosecutrix.

During the evening of June 14, 1957, Mrs. Lorraine Cota had been in San Diego with her husband and at about 9 o'clock p. m. Mrs. Cota boarded a local bus and started for home alone. She stepped off the bus a few blocks from where she was living and continued on foot toward her destination. Before she reached her home she heard and saw a convertible automobile and a truck approaching. She thought that the truck might have been driven by her cousin, who was a truck driver, and that his wife may have been driving the convertible. The convertible continued on around the corner but the truck stopped near by and a man whom Mrs. Cota mistook for her cousin called out and asked her if she wanted to ride. As she approached the truck she noticed that she had been mistaken concerning the identity of the occupant and that it was appellant, rather than her cousin, who had called to her. A passenger in the truck with appellant was William Hanna, a painter by trade. In response to appellant's invitation to ride Mrs. Cota said: "No, thank you. It is just a couple of blocks." While appellant and Mrs. Cota were discussing the proposed ride Hanna, who had stepped out of the truck, took Mrs. Cota by the elbows and hoisted her into the cab. Hanna then got in also, thereby placing Mrs. Cota between himself and appellant. After a brief ride to look at a vacated house which might be for rent, appellant said to Hanna: "You better go check on Charlie and I will meet you all down the street." Appellant then stopped the truck, whereupon Hanna dismounted and closed the door. Mrs. Cota said: "I can get off here too," but appellant replied: "No, I am going down there and I will let you out." He also said:

"Leave the door handle alone." Appellant continued to drive toward Mrs. Cota's home and Mrs. Cota said: "I will get out here. This is the corner." Instead of stopping appellant drove on to the end of the street which was a dead-end street with a canyon immediately beyond, and stopped the truck. Appellant then leaned toward Mrs. Cota and attempted to kiss her, whereupon she slapped him. In order to stall for time Mrs. Cota asked for a cigarette, which appellant gave her. He then exposed himself and attempted to force himself upon Mrs. Cota while she remained in a sitting position. She fought and kicked and burned him with the cigarette. Appellant said: "You can either be nice to me and let me do this or at any rate I am going to do it anyway. You might as well be nice about it and not get hurt." During this time appellant lifted Mrs. Cota's skirt, raising it up until the lower part of her body was exposed.

Mrs. Cota tried to open the door, but appellant prevented her from doing so by knocking her head against the door panel on the driver's side of the cab, and then forced her head under the steering wheel. She managed to sound the horn but appellant warned her that if she tried to do anything like that again she would be found dead in the canyon in the morning. Appellant also said that he was going to have intercourse and that Mrs. Cota could either make it easy for herself or die. Mrs. Cota said: "Well, let me up a minute." Again stalling for time, Mrs. Cota started to smoke another cigarette, during which time appellant was exposing himself and trying to induce her to fondle his private parts. Mrs. Cota said: "No" and began to scream. Appellant told her to stop screaming and made a threatening gesture with his hand. He then pushed her back into a prone position and again tried to force himself upon her. Mrs. Cota felt as if she were smothering and could not breathe. The next thing Mrs. Cota remembered was appellant shaking her and saying: "You are all right. You are not hurt and I will take you home." He drove her to within a block of her home and then permitted her to leave. Mrs. Cota called the police and appellant was apprehended later that night at his apartment.

When informed by the arresting officers that Mrs. Cota had accused him of an attack upon her appellant denied any knowledge of the incident, stating that he had been drinking beer with friends all evening, that he had returned home at approximately midnight and gone to bed. He said to the officers: "I never saw that skirt before in my life."

On June 17, 1957, Dr. Edward Corwin made a physical examination of Mrs. Cota in which he found that she had a contusion of the right thigh, contusion of the left thigh, a bruise on her right forearm, a small bruise on her right foot, tenderness and limited motion of the neck, and a small area of swelling on the forehead.

Appellant's testimony at the trial was that he did give Mrs. Cota a ride in the truck, that he did stop the truck, and that it was his intention to seduce her. He further testified that he did not get beyond kissing her and placing his hand on her knee. Appellant claimed that Mrs. Cota told him that she had cancer so appellant said "O. K." and abandoned his efforts at seduction. He further stated that Mrs. Cota seemed friendly toward him at the time they parted company.

█ It is well established in California that the crime of assault with intent to commit rape is committed if the defendant intended to have sexual intercourse with his victim and to use force to overcome her resistance. (*People* v. *Nye*, 38 Cal.2d 34, 37 [237 P.2d 1] ; *People* v. *Lutes*, 79 Cal.App.2d 233 [179 P.2d 815].) And the crime is complete if, at any moment during the assault, the accused intends to have carnal knowledge of his victim and to use, for that purpose, whatever force may be required. (*People* v. *Lutes, supra,* p. 236 ; *People* v. *Harshaw*, 71 Cal.App.2d 146, 149 [161 P.2d 978] ; *People* v. *Stewart*, 97 Cal. 238, 240 [32 P. 8].) █ The question whether the intent existed is one for the jury to determine from the conduct of the defendant and the surrounding circumstances, and a determination by the court is permissible only when the facts afford no reasonable ground for an inference that the intent existed. (*People* v. *Meichtry*, 37 Cal.2d 385, 389 [231 P.2d 847].)

The only case cited by appellant in support of his position is *People* v. *Mullen*, 45 Cal.App.2d 297 [114 P.2d 11], in which the order of the trial court denying a motion for new trial was reversed because the appellate court held that there was no satisfactory showing of an intent to commit rape. Relying on the Mullen case, appellant argues that unless he indicated a resolution to use all his force to commit rape there is no satisfactory proof of such intent, and that the assault must have been made with intent to commit a rape notwithstanding all possible resistance that could be made. As pointed out by this court in *People* v. *Nelson*, 131 Cal App.2d 571, 574 [281 P.2d 8], the old rule referred to in the Mullen case has been considerably modified in many modern cases. As in

the Nelson case the facts before us are quite different from those involved in the Mullen case where the incident occurred in daylight in a business building and with other people within call; there was no duress; there was no violence or threat of violence; and the efforts of the party charged were voluntarily abandoned without any fear of any interruption. In the case before us the incident occurred in a dark spot at night, there was ample evidence of duress and violence, and there was the announced intention of the appellant that he intended to have intercourse with Mrs. Cota and to accomplish such by force and violence if necessary.

■ Appellant contends that the fact that he voluntarily abandoned his attempt indicates that the intent to commit rape was not present, but that argument is answered by the holding of the court in *People v. Stewart, supra*, where the Supreme Court said: "If an assault with the intent here alleged is made, it is no less a crime, though the aggressor should abandon his intentions before the consummation of the act, by reason of the pains of a stricken conscience alone." In the present case every act and circumstance surrounding the assault itself is inconsistent with any inference other than an intent on the part of appellant to use such force as might be necessary to accomplish his purpose, and abandonment of the project is only one factor which the jury could consider. The evidence before us overwhelmingly supports the conclusion that appellant intended to rape Mrs. Cota and that he intended to accomplish the act by persuasion, if possible, or by threats and force, if necessary, and the jury's verdict should not be disturbed.

■ The remaining contention of appellant is that the court erred in not giving a cautionary instruction to the effect that since charges of sex offenses are easy to make and difficult to disprove, the testimony of the prosecutrix should be examined with caution. The only case relied upon by appellant in this connection is *People v. Nye*, 38 Cal.2d 34 [237 P.2d 1], where it is stated that even if a cautionary instruction is not requested by the defendant it is incumbent upon the court, in cases such as this, to give such an instruction on its own motion, whether the alleged victim is a child or a mature person. Under the rule announced in that case and the cases therein cited, the instruction should have been given. (See *People v. Putnam*, 20 Cal.2d 885, 890 [129 P.2d 367]; *People v. Lucas*, 16 Cal.2d 178 [105 P.2d 102, 130 A.L.R. 1485].)

■ However, the Nye case held the failure to give the cau-

tionary instruction not to be prejudicial and the Supreme Court's decision contains a discussion of the various cases in which such failure or refusal has been held to be prejudicial and those cases where no prejudice resulted. The circumstances of each case determine whether failure to give the instruction was prejudicial error, and reversal should not be ordered where it is improbable that a different verdict would have been returned had the cautionary instruction been given. In the present case, Mrs. Cota's testimony appears to be a straightforward account of the incident. there is nothing inherently improbable in her testimony, and no serious inconsistencies appear therein. Moreover, there is considerable evidence which corroborates the version given by Mrs. Cota. Under these circumstances it cannot be said that the jury would probably have returned a different verdict had the cautionary instruction been given, and for that reason the failure to give it was not prejudicial. A careful examination of the entire record, in accordance with article VI, section 4½ of the California Constitution, leads us to the conclusion that there has been no miscarriage of justice requiring a reversal of the judgment.

The judgment and the order denying the motion for a new trial are affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 19, 1958.