[Crim. No. 44784. Second Dist., Div. Six. Oct. 19, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
HOWARD ARTHUR TROTTER, Defendant and Appellant.

[No. B002246. Second Dist., Div. Six. Oct. 19, 1984.]

In re HOWARD ARTHUR TROTTER on Habeas Corpus.

**COUNSEL**

Charles A. Goff for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, Carol Wendelin Pollack and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STONE, P. J.**—Howard Arthur Trotter appeals from a jury conviction of assault with intent to commit rape (count I, Pen. Code, § 220) and false imprisonment (count II, Pen. Code, § 236). We affirm the judgment.

THE EVIDENCE

Theresa, the 14-year-old victim in this case, babysat for appellant's step-daughter for approximately one year prior to this incident. One Saturday evening as Theresa was walking down the street across from appellant's home appellant called to her; she crossed the street and approached him.

Theresa testified that appellant "kind of grabbed onto" her arm and "kind of pulled" her toward his house. She thought that he was joking with her. Once inside, however, appellant shut the door and tried to lock it. He kept hold of her arm and she became frightened.

Appellant then pulled up on Theresa's wrist and pushed back on her shoulder and she went down on the floor on her back. That motion hurt her shoulder.

Appellant then knelt beside her on her left side, with one knee close to her waist and the other near her upper thigh, and tried to pull up her shirt. She was trying to hold her shirt down. Appellant pulled her shirt up to her shoulders, exposing her bra. She was uncertain whether she was trying to get away during this period of time.

Appellant pressed down on her shoulders; that hurt and she was afraid. He then pulled up her bra and rubbed her breasts with both his hands. She reached down and put her fingers in the belt loops of her pants because she did not want him to pull her pants down.

Appellant was still kneeling at her side but had moved so that his knees were now between her armpit and her waist. He tried to unsnap her pants; she put her left hand over the button and kept her right hand in the belt loop. Appellant took her hand off the button and unfastened it; Theresa heard him unzip her pants. She kept her hands on the belt loops. She did not remember if she did anything to prevent appellant from unzipping her pants. She thought, but she was not sure, that appellant tried to pull her pants down.

Appellant then spread her pants apart and she heard him unzip his pants. He was still kneeling beside her. She did not move or say anything because she was afraid. Appellant bent over her sideways and touched his penis against her ribs approximately four inches below her left breast. She did not see his penis, but felt something "wet" and "kind of wiggling"; she felt his body rocking back and forth. She did not feel any hair rubbing against her.

She hit him on the arm with her fingers and he held her shoulders on the floor. He told her there was nothing to be afraid of. She took her knee and hit him in the ribs and he knelt up. She scooted away, stood up and straightened her clothes. She noticed that her stomach was "kind of wet" when she pulled her shirt down.

Appellant was zipping up his pants as she went out the door. Less than 10 minutes had elapsed from the time he had first called to her from across the street.

Theresa was crying as she walked home. She talked and cried to her dogs for a while and then called her friend, whose mother called the police. Theresa noticed a small bruise on her knee which had not been there that morning.

## THE MOTION FOR NEW TRIAL

Appellant moved unsuccessfully for a new trial on the grounds of insufficiency of the evidence to support the finding that he intended to rape Theresa. He argues here that the trial court misconstrued its duty under Penal Code section 1181 because the judge indicated at sentencing that, while he had a reasonable doubt as to appellant's intent and while he would not have found appellant guilty if there had been a court trial, he was convinced that there was substantial credible evidence to support the verdict. Accordingly, he refused to overrule the jury merely because he personally disagreed with them.

The trial court's perception of its duty is correct. ■ "It has been stated that a defendant is entitled to two decisions on the evidence, one by the jury and the other by the court on motion for a new trial. [Citations.] This does not mean, however, that the court should disregard the verdict or that it should decide what result it would have reached if the case had been tried without a jury, but instead that it should consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict." (*People* v. *Robarge* (1953) 41 Cal.2d 628, 633 [262 P.2d 14].) That is exactly what the trial court did in this case.

## SUFFICIENCY OF THE EVIDENCE

Appellant asserts that the evidence is insufficient as a matter of law to support the finding that he intended to use *force* to have intercourse with Theresa *against her will*. We disagree.

■ " 'To support a conviction for assault with intent to commit rape, the prosecution must prove the assault and an intent on the part of defendant to use whatever force is required to complete the sexual act against the will of the victim.' " (*People* v. *Soto* (1977) 74 Cal.App.3d 267, 278 [141 Cal.Rptr. 343].) Courts recognize "a distinction . . . between the intent to rape, and lewdness, indecency and lasciviousness either alone or accompanied by an intent to seduce." (*People* v. *Cortez* (1970) 13 Cal.App.3d 317, 326 [91 Cal.Rptr. 660].) "Nevertheless, if there is evidence of the former intent and acts attendant to the execution of that intent, the abandonment of that intent before consummation of the act will not erase the felonious nature of the assault." (*Soto, supra,* at pp. 278-279.)

"The question whether the intent existed is one for the jury to determine from the conduct of the defendant and the surrounding circumstances. A determination by the court is permissible only when the facts afford no reasonable ground for an inference that the intent existed." (*People* v. *Meichtry* (1951) 37 Cal.2d 385, 388-389 [231 P.2d 847].)

Appellant relies predominately on *People* v. *Mullen* (1941) 45 Cal.App.2d 297 [114 P.2d 11], a holding with which we strenuously disagree. In *Mullen,* the victim, a dancer, went to defendant's studio to audition. Defendant suggested that she do some solo work, which would require that she dance partially nude, and requested that she remove her dress so that he might see her figure. When she declined to do so, he insisted that she comply. When she still refused, he took hold of her dress, pulled it up to her waist, put one hand on her breast and the fingers of his other hand into her private parts. When she begged him to let her go, he did so for a moment but then grabbed her again, struggling so hard to kiss her that he forced the breath out of her. He pulled her down to a bench and kept kissing her and fondling her breasts. In the struggle, her necklace was pressed down against her skin making a mark across her neck. After considerable time, he released her and she ran out of the studio. The court reversed defendant's conviction for assault with intent to commit rape.

The first problem with the holding in *Mullen* has been addressed by other courts. "[T]o the extent that [*Mullen*] impels proof that the offender must indicate a resolve to use *all of his force* to commit rape *notwithstanding all possible resistance* it is no longer followed." (*People* v. *Hood* (1962) 199 Cal.App.2d 44, 46 [18 Cal.Rptr. 351]; *People* v. *Greene* (1973) 34 Cal.App.3d 622, 651, fn. 7 [110 Cal.Rptr. 160], and cases cited therein.)

The bigger problem in our view, however, is that the *Mullen* court misstated the law regarding "abandonment." The court held that "[w]hatever the extent and however rough the fondling of the woman, if her pursuer

without fear of interruption voluntarily abandons his endeavor to ravish her sexual organs, then the force he employed was not an assault with intent to commit rape." (45 Cal.App.2d at p. 300.) That was not the law in 1941 when *Mullen* was decided (*People* v. *Stewart* (1893) 97 Cal. 238, 240 [32 P. 8]; *People* v. *Bowman* (1907) 6 Cal.App. 749, 751 [93 P. 198]), and it is not the law now (*People* v. *Soto, supra,* 74 Cal.App.3d 267; *People* v. *House* (1958) 157 Cal.App.2d 151, 156 [320 P.2d 542]; *People* v. *Green* (1960) 180 Cal.App.2d 537, 542-543 [4 Cal.Rptr. 304]). If, at *any point* during the incident, defendant entertains the intent to have sexual intercourse with his victim by force, the crime of assault with intent to commit rape is complete. It makes no difference whatsoever that he later abandons that intent.[1]

■ The People relied on the "abandonment" theory in this case and there is sufficient evidence to sustain appellant's conviction on that theory. Theresa was a very naive 14-year-old. Appellant pulled her into the house; he tried to lock the door; he held her down on the floor; he pulled up her shirt and bra and unsnapped and unzipped her pants; all of this despite her attempts to prevent him from doing so. (See, e.g., *People* v. *Meichtry, supra,* 37 Cal.2d 385 and *People* v. *Soto, supra,* 74 Cal.App.3d 267 at pp. 277-279.)

"[I]t is not the function of this court to determine whether a different finding would be just as reasonable as the one made [by the trier of fact]; rather, this court simply determines whether there is substantial evidence, including inferences reasonably deduced from the facts in evidence, to support the finding actually made." (*People* v. *Bard* (1968) 70 Cal.2d 3, 6 [73 Cal.Rptr. 547, 447 P.2d 939].) One reasonable inference on the facts presented here is that appellant intended to have intercourse with Theresa despite her resistance and that, at some point during the encounter, he abandoned that intent and sought sexual gratification through other means. We may not overturn the jury's verdict in the light of that inference.

INSTRUCTIONS

■ The jury was instructed that "the specific intent required for the crime of assault with intent to commit rape is satisfied if at any moment

---

[1]We also disagree with the *Mullen* court's suggestion that if defendant had actually intended to rape the dancer, he would have done so: "She was small and illy equipped to cope with so formidable an adversary. He was large and possessed sufficient physical power to have accomplished his purpose. . . . But aside from all other considerations, when the prosecutrix had testified that, after her feeble resistance, unhindered and alone, she walked forth from the dance room without molestation, she spoke the words that cleared defendant of a felony." (*Id.,* at p. 301.)

during the assault the defendant intends to have sexual intercourse with the victim and to use for that purpose force or a *threat of force.*" (Italics added.) Appellant complains that the instruction did not include the specialized definition of the phrase "threat of force" (Pen. Code, § 261, subd. (2)); i.e., that any threat of force be sufficient to overcome the will of the victim by reasonably giving rise to fear of any immediate and unlawful bodily injury. This argument has no merit.

Two other instructions included the verbatim language of Penal Code section 261, subdivision (2): "Rape is an act of sexual intercourse with a person who is not the spouse of the perpetrator accomplished against the will of such person by means of force or fear of immediate and unlawful bodily injury to such person," and, "In order to prove the commission of the crime of rape, each of the following elements must be proved; . . . (4a) That the act was accomplished by means of force, or (4b) That such act was accomplished by means of fear of immediate and unlawful bodily injury to such person."

In addition, the jury was instructed that they were to consider all the instructions as a whole. We must assume that "[j]urors are intelligent beings and capable of understanding and correlating all instructions which are given to them." (*People* v. *Billings* (1981) 124 Cal.App.3d 422, 427-428 [177 Cal.Rptr. 392].) There was no error.

ADEQUACY OF TRIAL ASSISTANCE

Appellant challenges the competency of his trial counsel in several areas. He has supplemented his allegations with a petition for writ of habeas corpus, which we have considered in conjunction with this appeal. (*In re Rinegold* (1970) 13 Cal.App.3d 723, 725 [92 Cal.Rptr. 18].) We conclude that his contentions have no merit.

 Appellant argues initially that his trial counsel "would not permit" him to testify to the "version of the incident" outlined in his declaration in support of petition for writ of habeas corpus, thereby withdrawing a potentially meritorious defense from the jury's consideration. There are two problems with his presentation of this issue: first, while appellant's counsel characterizes the interaction as "[trial counsel] would not permit appellant to testify," appellant states in his declaration: "I wanted to testify at my trial, but was advised not to by my attorney."

Advising a client not to testify does not in and of itself constitute inadequate trial assistance. (*In re Noday* (1981) 125 Cal.App.3d 507, 522 [178 Cal.Rptr. 653].) Instead, it implies a tactical decision; convictions will not

be reversed on the basis of such decisions. (*People* v. *Lanphear* (1980) 26 Cal.3d 814, 828 [163 Cal.Rptr. 601, 608 P.2d 689], judgment vacated and cause remanded *California* v. *Lanphear* (1980) 449 U.S. 810 [66 L.Ed.2d 13, 101 S.Ct. 57], reiterated *People* v. *Lanphear* (1980) 28 Cal.3d 463 [171 Cal.Rptr. 505, 622 P.2d 950]; *People* v. *Thomas* (1974) 43 Cal.App.3d 862, 869 [118 Cal.Rptr. 226].)

Second, the conclusion that advising appellant not to testify was a tactical decision is buttressed by appellant's recitation of the "version" of the incident about which he wished to testify. Without going into detail, suffice it to say that appellant admits significant lewd conduct with the victim. Cross-examination under such circumstances might have proven disastrous. In addition, had appellant testified to the facts set forth in his declaration, he would have had to explain why it was that he had no recollection of the events at all when he was first confronted by law enforcement. Trial counsel's assistance was not inadequate in this regard.

Appellant next challenges his trial counsel's failure to cross-examine the victim regarding the discrepancies between her version of the incident and his version thereof. Having made the tactical decision not to present appellant's testimony, trial counsel can hardly be faulted for failing to intimate facts on cross-examination which would remain undeveloped. The record reveals that counsel cross-examined the victim at length about the discrepancies between her testimony at the preliminary hearing and her testimony at trial. Under the circumstances, this was the best course of action available.

Appellant's final challenge is that his trial counsel failed (1) to move to suppress evidence of his "silence upon being informed of the charges against him," (2) to object to the prosecutor's argument that that "silence" constituted an admission that the charges were true, and (3) to object to jury instructions regarding admissions.

This argument misses the point. This is not a situation where an in-custody defendant's silence after *Miranda* warning is used against him as an admission of guilt. (*People* v. *Cockrell* (1965) 63 Cal.2d 659 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Ridley* (1965) 63 Cal.2d 671 [47 Cal.Rptr. 796, 408 P.2d 124].) It was not appellant's "silence" which was introduced against him; it was his prearrest interview (i.e., his *statements*) with the detective in which he voluntarily discussed but failed to deny the incident.

■ "If a person is accused of having committed a crime, under circumstances which fairly afford him an opportunity to hear, understand, and to reply, and which do not lend themselves to an inference that he was relying

on a right of silence guaranteed by the Fifth Amendment of the United States Constitution, and he fails to speak, or he makes an evasive or equivocal reply, both the accusatory statement and the fact of silence or equivocation may be offered as an implied or adoptive admission of guilt." (*People* v. *Preston* (1973) 9 Cal.3d 308, 313-314 [107 Cal.Rptr. 300, 508 P.2d 300]; *People* v. *Richards* (1976) 17 Cal.3d 614 [131 Cal.Rptr. 537, 552 P.2d 97].)

 Trial counsel objected to the introduction of this evidence on hearsay grounds; the objection was properly overruled and the evidence admitted pursuant to Evidence Code sections 1220 and 1221. Counsel was not expected to make an objection on *Miranda-Griffin* grounds when there was no possibility that it would have been granted. (Cf. *People* v. *Haskett* (1982) 30 Cal.3d 841, 854-855 [180 Cal.Rptr. 640, 640 P.2d 776].)

CONCLUSION

The judgment is affirmed. Appellant's petition for habeas corpus is denied.

Abbe, J., and Gilbert, J., concurred.