Filed 9/29/16  P. v. Arroyo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068804 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD253950) |
| RENE ARROYO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge.  Affirmed.

Doris M. LeRoy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

I

INTRODUCTION

A jury convicted Rene Arroyo of assaulting his sister (Pen. Code,[1] § 240; count 1); assaulting his brother-in-law with a firearm (§ 245, subd. (a)(2); count 2); criminally threatening his sister (§ 422; count 3); being a felon in possession of a firearm (§ 29800, subd. (a)(1); count 4); and assaulting his sister by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 7). As to the count 3 criminal threats conviction, the jury additionally found Arroyo was armed with a firearm at the time he committed the offense (§ 12022, subd. (a)(1).[2] Arroyo further admitted having six prior prison commitment convictions (§ 667.5, subd. (b)), two prior serious felony convictions (§ 667, subd. (a)(1)), and two prior strike convictions (*id.*, subd. (b)-(i)). The court sentenced him to a determinate term of 18 years and a consecutive indeterminate term of 25 years to life in state prison.

Arroyo appeals, contending his trial counsel provided ineffective assistance by failing to object to the admission of gang expert testimony and other gang-related evidence. He also contends there was insufficient evidence he assaulted his sister with

_____

1       Further statutory references are to the Penal Code unless otherwise stated.

2       The assault conviction in count 1 was a lessor included offense of the originally charged offense, assault with a firearm (§ 245, subd. (a)(2)). The jury acquitted Arroyo of the crime of attempting to dissuade a witness (§ 136.1, subd. (b)(1); count 5). As to the count 3 criminal threats conviction and the count 4 firearm possession conviction, the jury found Arroyo did not personally use a firearm during the commission of these offenses (§ 1192.7, subd. (c)(8)). As to the count 7 assault with force likely to produce great bodily injury conviction, the jury found Arroyo did not personally use a deadly and dangerous weapon during the commission of this offense (§ 1192.7, subd. (c)(23)).

2

force likely to result in great bodily injury, and the court abused its discretion in denying his new trial motion because the court applied an incorrect legal standard. For the reasons explained *post*, we are unpersuaded by these contentions and affirm the judgment.

## II

## BACKGROUND

Arroyo lived in the garage of a home owned by the estate of his deceased father. His sister and her family lived in the home. One night, Arroyo and his sister argued over the disposition of the home. Arroyo's son, who was visiting Arroyo, stood next to Arroyo and watched the argument. Arroyo grabbed his sister by her hair and hit her right shoulder. As she picked up a phone and called 911, Arroyo asked his son for a gun. His son pulled out a gun from inside his clothes and handed it to Arroyo. Arroyo pointed the gun at his sister. He told her he was going to kill her and lay her next to their deceased mother.

Around that time, Arroyo's brother-in-law arrived to investigate the confrontation. Arroyo handed his son the gun and told his son to "smoke him" or "shoot him." Arroyo's son pointed the gun at Arroyo's brother-in-law. Arroyo's sister moved to stand in front of Arroyo's brother-in-law and Arroyo's son pointed the gun at her. Arroyo's brother-in-law quickly diffused the situation and Arroyo and his son left the home.[3]

---

3    Arroyo and his son were tried together for charges related to this incident. The jury convicted Arroyo's son of assault with a firearm and being a felon in possession of a

3

While Arroyo lived at the home, prison inmates sent mail to him. One item of mail contained a check for $400. After the above incident, Arroyo's sister began rejecting the mail, which made Arroyo angry. He called her home and threatened to kill her. A week or two after the incident, Arroyo's son went to Arroyo's sister's home to pick up Arroyo's mail. Arroyo's sister told Arroyo's son she did not have Arroyo's mail. She also told him the police were looking for him. He laughed and thanked her for letting him know.

About two months after the incident, Arroyo unexpectedly barged into the home, ran over to his sister, and started hitting her left side and the back of her head with his fists. Arroyo's nephew came into the room, ran to him, and stabbed his lower left ribs twice with a knife. Arroyo stopped, noticed himself bleeding, started going toward his sister again, stopped again and then left through the back of the home.

Police officers subsequently located and arrested Arroyo at a hospital, where he was receiving treatment for stab wounds under an assumed name. While there, he told a police detective in reference to his sister, who he believed had mistreated his father, "I should have killed that bitch when I was there. Then I could avenge my father's death."

The parties stipulated Arroyo had been convicted of a felony in California within the seven years preceding the trial.

---

firearm and found true related firearm use allegations. We affirmed the conviction on appeal. (*People v. Arroyo* (June 7, 2016, D067976) [nonpub. opn.].)

## III

## DISCUSSION

### A

### 1

The prosecutor filed a motion in limine to admit expert evidence Arroyo and his son were affiliated with the East San Diego criminal street gang and Arroyo was an associate of the Mexican Mafia criminal prison gang. The court discussed the motion with the parties off the record and then memorialized the discussion on the record.

One of the charges against Arroyo was making a criminal threat (count 2), which has a reasonable fear element (*People v. Toledo* (2001) 26 Cal.4th 221, 227). Finding Arroyo's sister's belief Arroyo was a gang member factored into the reasonableness of her fear, the court granted the motion as to Arroyo, but limited the admissible evidence to evidence that Arroyo was a member of a criminal street gang and a prison gang, without identifying the names of the gangs.[4]

Although there is no indication in the record the court formally changed its ruling, by the time the prosecutor presented the gang evidence, the prosecutor understood the court's ruling as allowing the presentation of general evidence about the Mexican Mafia prison gang and its operations and prohibiting the presentation of any evidence indicating Arroyo was a documented gang member. Arroyo's counsel did not object to or attempt to

---

[4] The court's minutes state: "People's Motion to Admit Evidence of Defendants' Gang Affiliation as to [Arroyo] is granted but limited to member of criminal street gang. Mexican Mafia is excluded." (Underlining and boldface type omitted.)

5

clarify the prosecutor's understanding. The court also did not attempt to correct or clarify it. Rather, both the court and Arroyo's counsel acquiesced in the prosecutor's understanding.

At trial, Arroyo's sister testified she believed Arroyo was a gang member and only associated with gang members. She explained that he had a paper with codes on it and he told her he had to get the codes out to people. She believed he was referring to gang members because he told her about the codes right after he had been released from prison.

A gang expert later testified about the difference between a criminal street gang and a criminal prison gang. The expert also testified about the Mexican Mafia criminal prison gang, including its membership and hierarchy, its methods of communicating inside and outside of prison using codes, and its laundering of drug proceeds by having money sent to and from prisoner accounts.

Arroyo's counsel asked the expert about the expert's knowledge of Arroyo's and his son's status as gang members. The expert testified he did not research them and did not know anything about their status.

The prosecutor believed and the court agreed this line of questioning and the manner in which it was done created a false impression Arroyo and his son were not gang members. The prosecutor requested the parties stipulate Arroyo was a gang member. Instead of granting the request, the court told the prosecutor she could ask the expert on redirect what he was asked to do and how he prepared.

Arroyo's son's counsel objected to any questioning of the expert as to anything he may or may not have been asked to do with reference to Arroyo's son because there was no gang connection to the charges against Arroyo's son. After both defense counsel assured the court and the prosecutor they would not exploit the situation by arguing in closing that there was no evidence their clients were gang members, the court ruled: "With this witness, I think you can—you can go along the lines of what I've suggested. You contacted him yesterday, he knows about gangs in general, that's what he was here to testify about, and he does not know whether or not [Arroyo] or anybody involved in this case is or is not a member of a gang. That's not what he was asked to do, and leave it at that."

When the trial resumed, the prosecutor had the expert clarify the prosecutor only asked him to testify about gang members generally. The prosecutor did not ask him to conduct any investigation into Arroyo's background.

2

a

Arroyo contends we must reverse his convictions for assaulting his brother-in-law with a firearm (count 2), being a felon in possession of a firearm (count 4), and assaulting his sister by means of force likely to produce great bodily injury (count 7), as well as the true finding on the firearm enhancement attendant to his criminal threats conviction (count 3) because his trial counsel provided ineffective assistance by failing to object to the gang-related testimony from his sister and the gang expert. According to Arroyo, the gang evidence was irrelevant and vastly more prejudicial than probative, its admission

7

violated the trial court's in limine order, and there is no satisfactory explanation for counsel's failure to object to its admission.

b

A defendant who claims his counsel's inaction violated his constitutional right to the effective assistance of counsel "bears the burden of showing by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficiencies resulted in prejudice."  (*People v. Centeno* (2014) 60 Cal.4th 659, 674, citing *Strickland v. Washington* (1984) 466 U.S. 668, 688, 694; *People v. Ledesma* (2006) 39 Cal.4th 641, 746; *People v. Ledesma* (1987) 43 Cal.3d 171, 216, 218.)  "If the defendant makes an insufficient showing on either one of these components, the ineffective assistance claim fails."  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126.)

"As [the California Supreme Court has] often observed, whether or not to object to evidence at trial is largely a tactical question for counsel, and a case in which the mere failure to object would rise to such a level as to implicate one's state and federal constitutional right to the effective assistance of counsel would be an unusual one. [Citation.]  An attorney may well have a reasonable tactical reason for declining to object, and ' "[i]f the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation." ' "  (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1312-1313.)

8

Here, one possible, if not probable, satisfactory explanation for counsel's failure to object to the gang expert's testimony and the other gang-related evidence is that the evidence the prosecutor actually presented was arguably less harmful to Arroyo than the evidence the prosecutor could have presented had the prosecutor followed the court's in limine ruling more precisely. The court's in limine ruling, as reflected in the record, allowed the prosecutor to present evidence that Arroyo's sister believed Arroyo was a gang member and Arroyo was both a documented member of a criminal street gang and an associate of a criminal prison gang. The evidence the prosecutor actually presented was that Arroyo's sister believed Arroyo was a gang member, there is a prison gang known as the Mexican Mafia, its operating methods include using codes and laundering money through inmate accounts; however, the gang expert did not investigate and did not know whether Arroyo was a member of the gang.

Given the choice between evidence confirming Arroyo's status as a gang member and evidence his status as a gang member was not known, Arroyo's counsel could have tactically preferred the latter evidence and opted not to object to its introduction. Consequently, we cannot conclude the failure to object was professionally unreasonable and, concomitantly, we need not address whether the failure to object prejudiced Arroyo.

B

1

Arroyo alternatively contends we must reverse his conviction for assault by means of force likely to produce great bodily injury (count 7) because there was insufficient evidence he assaulted his sister with such force. More particularly, he contends the

9

absence of evidence she suffered a visible physical injury from his punches indicates his punches were not strong enough to inflict more than an insignificant, trivial or moderate injury. (See *People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066 ["great bodily injury" means bodily injury which is significant or substantial, not bodily injury which is insignificant, trivial or moderate].)

2

a

"When a defendant challenges the sufficiency of the evidence, " ' "[t]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citations.] 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. [Citation.]' [Citation.] We ' " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " ' " (*People v. Clark* (2011) 52 Cal.4th 856, 942-943.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

b

The crime of assault by means of force likely to produce great bodily injury may be committed by the use of hands or fists. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028; *People v. Wingo* (1975) 14 Cal.3d 169, 176; *People v. Tallman* (1945) 27 Cal.2d

10

209, 212; *In re Nirran W.* (1989) 207 Cal.App.3d 1157, 1161.) Whether the use of hands or fists is likely to produce great bodily injury is a factual question determined by the force of the impact, the manner in which the hands or fists were used, and the circumstances under which the force was applied. (*People v. Score* (1941) 48 Cal.App.2d 495, 498; *People v. White* (1961) 195 Cal.App.2d 389, 392.)

Here, the evidence showed Arroyo rushed his sister and repeatedly hit her head and torso with his fists as she crouched on the floor beneath him. She described the blows as hard and painful. He did not stop hitting her until her son intervened and stabbed him with a knife. The jury could have reasonably found from the manner and circumstances in which Arroyo delivered his blows that his blows were of sufficient force to be likely to cause his sister great bodily injury.

The absence of physical injury to his sister did not preclude the jury's finding from being reasonable, particularly where, as here, there was quick intervention to stop the blows. (*People v. Armstrong*, *supra*, 8 Cal.App.4th at pp. 1065-1066.) Section 245, subdivision (a)(4) "prohibits an assault by means of force *likely* to produce great bodily injury, not the use of force which does *in fact* produce such injury."[5] (*People v. Armstrong*, at p. 1065.) The crime may be committed without making physical contact or inflicting any physical injury. (*People v. Aguilar*, *supra*, 16 Cal.4th at p. 1028; *People v.*

---

[5] Section 245, subdivision (a)(4), provides: "Any person who commits an assault upon the person of another by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment."

*Samuels* (1967) 250 Cal.App.2d 501, 513.) The focus of the crime is on the forced used, not on the existence or absence of a resulting injury. (*People v. Aguilar*, at p. 1028; *In re Nirran W.*, *supra*, 207 Cal.App.3d at pp. 1161-1162; see also, e.g., *People v. Chambers* (1964) 231 Cal.App.2d 23, 27 [holding evidence of repeated blows to an old, emaciated, and, therefore, probably weak man's stomach was sufficient to show force used was likely to produce great bodily injury despite the absence of evidence of actual injury].) Accordingly, we conclude Arroyo has not established there was insufficient evidence to support his conviction for assaulting his sister by means of force likely to produce great bodily injury.

C

1

Before the sentencing hearing, Arroyo moved for a new trial on the ground the jury's verdict was contrary to the evidence received at trial. Specifically, Arroyo asserted the jury did not give enough weight to the "bad blood" between Arroyo and his sister, to her financial and personal motives for wanting to see Arroyo convicted of the charged crimes, her children's loyalty to her, and the consequent expectation they would support her version of events.

After hearing the parties' oral arguments on the motion, the court ruled:

"Asking for a motion for a new trial under [section] 1181 on the issue of witness credibility or credibility determination is a pretty tough ladder to climb. [¶] We, as reviewing courts or judges that preside over trials, taking great pains not to interfere with a jury's determination of credibility of witnesses. In other words, unless a witness's

12

testimony is, basically, physically impossible or inherently incredible, it isn't a situation where it is really appropriate for us to tread.

"Having said all of that, I don't have a fundamental problem with the jury's determination in this particular case. They're entitled to believe who they want to believe.

"The testimony of [Arroyo's sister] and her family members is no different than the testimony of countless other victims and family members of the victims or complaining witnesses in cases that the court has heard over the many years that I've been presiding over those kinds of cases. There was nothing that was inherently incredible about the testimony. There was nothing that was physically impossible about the testimony.

"So, I don't—I don't believe that it is appropriate for me to interfere with the jury's determination on those particular issues, especially considering the fact, as [the prosecutor] has mentioned, that the jury was pretty critical in evaluating the testimony and how they applied it to the law.

"And, in fact, they did not just fill out the forms guilty of everything in this particular case. They critically evaluated those things, and I think they made a decision that is supported by the evidence that is—that they were entitled to believe, and so the motion for new trial is denied."

2

a

Arroyo contends the court abused its discretion in denying his new trial motion because the court applied an incorrect legal standard. More particularly, the court deferred to the jury's credibility determinations instead of independently assessing the witnesses' credibility.

" 'When a trial court rules upon a motion for a new trial made upon the ground of insufficiency of the evidence, the judge is required to weigh the evidence and judge the credibility of witnesses.' [Citation.] 'While it is the exclusive province of the jury to find the facts, it is the duty of the trial court to see that this function is intelligently and justly performed, and in the exercise of its supervisory power over the verdict, the court, on motion for a new trial, should consider the probative force of the evidence and satisfy itself that the evidence as a whole is sufficient to sustain the verdict.' [Citation.] Insufficiency of the evidence in this context means an absence of evidence or that the evidence received, in the individual judgment of the trial judge, is lacking in probative force to establish the proposition of fact to which it is addressed. [Citation.] [¶] The court does not disregard the verdict, or decide what result it should have reached if the case had been tried without a jury, but instead 'it should consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict.' " (*Dominguez v. Pantalone* (1989) 212 Cal.App.3d 201, 215, citing *People v. Robarge* (1953) 41 Cal.2d 628, 633.)

14

Appellate courts will not interfere with a decision granting or denying a motion for new trial absent a clear showing of an abuse of discretion. (*People v. Robarge*, *supra*, 41 Cal.2d at p. 633.) "Such an abuse of discretion arises if the trial court based its decision on impermissible factors [citation] or an incorrect legal standard [citations]." (*People v. Knoller* (2007) 41 Cal.4th 139, 156.)

b

While the court in this case incorrectly, or at least inarticulately, expressed the standards governing its consideration of Arroyo's new trial motion, the court nonetheless correctly performed the task required of it. Contrary to Arroyo's assertion, the court's task was not to decide whether it personally agreed with the jury's credibility determinations and to overrule the verdict if it did not. (See *People v. Trotter* (1984) 160 Cal.App.3d 1217, 1221.) Rather, "guided by a presumption in favor of the correctness of the verdict and the proceedings supporting it" (*People v. Davis* (1995) 10 Cal.4th 463, 524), the court's task was to evaluate the evidence as a whole and determine whether, properly weighed, there was sufficient credible evidence to support the jury's verdict. (*People v. Robarge*, *supra*, 41 Cal.2d at p. 633; *Dominguez v. Pantalone*, *supra*, 212 Cal.App.3d at p. 215.) A court effectively fulfills this task if, after independently weighing the evidence, the court does not express any doubt as to the defendant's guilt and indicates it is not clearly satisfied the jury's verdict was wrong. (See *People v. Richard* (1951) 101 Cal.App.2d 631, 633-634.)

This is essentially what occurred in this case. The court indicated it did not have any difficulty with the jury's verdict, it explained why it did not believe the testimony of

15

Arroyo's sister and her family was necessarily incredible, and it found there was sufficient evidence to support the jury's verdict. We, therefore, cannot conclude the court clearly abused its discretion in denying Arroyo's new trial motion notwithstanding the court's misstatement of the applicable legal standards. (See *People v. Lopez* (1969) 1 Cal.App.3d 78, 84-85 [a defendant is not prejudiced by a court's misstatement of law regarding the court's role in ruling on a new trial motion where the court nonetheless independently evaluated the evidence and concluded for itself the guilty verdict was justified]; accord, *Dominguez v. Pantalone*, *supra*, 212 Cal.App.3d at pp. 215-216.)

IV

DISPOSITION

The judgment is affirmed.

_____
McCONNELL, P. J.

WE CONCUR:


_____
HUFFMAN, J.


_____
NARES, J.

16