Filed 10/3/25  P. v. Jackson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C102293 |
| Plaintiff and Respondent, | (Super. Ct. No. 23FE004028) |
| v. | |
| THEOPHILAS JACKSON, | |
| Defendant and Appellant. | |

A jury found defendant Theophilas Jackson guilty of robbing the employees of an AutoZone store, making criminal threats, and reckless evasion of police.  Appointed counsel asks this court to review the record to determine whether there any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  Defendant has filed a supplemental brief contending the verdicts were not supported by substantial evidence and defense counsel was ineffective.  Having reviewed the record and considered

1

defendant's supplemental brief, we find no arguable error that would result in a disposition more favorable to defendant. We will affirm the judgment.

## I. BACKGROUND

We provide the following brief description of the facts and procedural history. (See *People v. Kelly* (2006) 40 Cal.4th 106, 110, 124.)

On March 19, 2023, around 3:00 p.m., M.S. was working at the counter of an AutoZone store when defendant came in and asked for an alternator and a battery.[1] M.S. brought out an alternator and set it on the counter. He turned around to get the battery. When M.S. turned back, he and the store manager, D.H., saw defendant heading for the front door with the alternator. M.S. and D.H followed defendant out of the store. M.S. had a hammer in his hand. Defendant got into a pickup truck. Defendant's truck had a blue tarp on the bed. D.H. went to the driver's side window and asked defendant to return the alternator. When defendant did not answer, D.H. yelled at him to return the alternator and struck the mirror of defendant's truck with his hand. M.S. yelled at defendant that they were going to call the police, but defendant did not leave. M.S. called 911 and talked to the dispatcher. M.S. pulled on the blue tarp that was covering the truck bed. Defendant got out of the truck with a pipe in his hand. M.S. and D.H. went back into the store.

Defendant entered the store again (without a pipe). M.S. and D.H. ran behind the counters. Defendant got a battery from the battery rack. D.H. confronted him and told defendant he was not leaving with the battery. D.H. struggled with defendant over the battery until defendant let go and left the store.

Defendant came back in the store a third time. Defendant said, "I'm gonna shoot anyone who tries to stop me" (as M.S. testified) or "I'm going to shoot these

---

[1] We refer to the victims by their initials pursuant to California Rules of Court, rule 8.90(b)(4). References to undesignated rules are to the California Rules of Court.

motherfuckers" (as D.H. testified). M.S. ran down the aisles because defendant said he was going to shoot anyone who stopped him. D.H. was afraid for his life. D.H. believed defendant had a gun because he had his hand in his jacket. Another AutoZone employee, K.L., heard defendant scream "somebody's gonna get shot up in this place" and he was "going to shoot up the place" before taking a battery. K.L. was afraid and felt his life was in danger. Defendant had his hand on his waist where he could have had a gun. Defendant got another battery and left the store.

On March 19, 2023, Sacramento police officer Alicia Pangelinan was on patrol in uniform and driving a marked police car, when she received a call about a robbery at an AutoZone store in Sacramento. Officer Pangelinan saw a blue pickup truck with a blue tarp on the back of it that matched the description of the vehicle involved in the robbery, which she was able to confirm by matching the license plate number. Officer Pangelinan followed the truck. When stopped at an intersection, the driver opened his door and Officer Pangelinan made eye contact with him. After following the truck on the highway and surface streets, Office Pangelinan activated the lights and siren of the patrol car. Other officers were following her. Defendant drove through multiple stop signs and a stop light. Consistent with police department policy, a K-9 officer took over the lead in the pursuit. Defendant drove around a vehicle stopped at a stop light and into opposing traffic, almost hitting another vehicle stopped at the stop light. At one point, the truck stopped and the driver's side door opened. The K-9 officer told defendant to put his hands up. Instead, defendant closed the door, drove off, and hopped the curb at a market into the parking lot to continue to flee from officers. Officers were able to pin defendant's truck against the curb and arrest defendant. Officers found a car battery reported stolen from AutoZone in the truck.

3

Defendant requested mental health diversion under Penal Code section 1001.36.[2] In December 2023, the trial court found defendant eligible but not suitable for mental health diversion and denied the request.

In June 2024, an amended information charged defendant with robbery of M.S. (§ 211—count one), robbery of D.H. (§ 211—count two), criminal threats against M.S. (§ 422—count three), criminal threats against D.H. (§ 422—count four), and reckless evasion of police pursuit (Veh. Code, § 2800.2, subd. (a)—count five). The amended information alleged defendant suffered four prior convictions within the meaning of the three strikes law (§§ 667, subd. (e)(2), 1170,12, subd. (c)(2)), and further alleged defendant's prior convictions were numerous or of increasing seriousness (rule 4.421(b)(2)) and defendant served a prior prison term (rule 4.421(b)(3)).

The jury found defendant guilty on all five counts. Defendant waived jury trial on the prior conviction and aggravating circumstance allegations, which the trial court found to be true.

In October 2024, the trial court conducted a sentencing hearing. The court considered defendant's letter claiming ineffective assistance of counsel and did not find any grounds to grant a new trial. With the People's agreement, the court granted defendant's motion under section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 and dismissed three of defendant's four prior convictions. The trial court imposed an aggregate sentence of 13 years four months in state prison comprised of the upper term of five years doubled by the strike to 10 years on count one, one-third the middle term doubled by the strike to two years on count two, the upper term of three years doubled by the strike to six years on count three (stayed under section 654), the upper term of three years doubled by the strike to six years on count four (stayed under

_____

[2] Undesignated statutory references are to the Penal Code.

4

section 654), and one-third the middle term of eight months doubled by the strike to one year four months on count five.

The trial court awarded defendant 658 days of presentence custody credits. The court imposed a $300 restitution fine (§ 1202.4) and a $300 parole revocation fine (§ 1202.45) (suspended), and ordered restitution to D.H. and AutoZone in an amount to be determined (if any), as well as imposing a $200 court operations fee (§ 1465.8) and a $150 conviction assessment (Gov. Code, § 70373).

Defendant filed a timely notice of appeal.

## II. DISCUSSION

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief that sets forth the facts and procedural history of the case and requests this court to review the record and determine whether there are any arguable issues on appeal. (*Wende, supra*, 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days from the date the opening brief was filed. Defendant filed a supplemental brief.

We understand defendant to argue primarily that the verdict is not supported by substantial evidence. Defendant contends, inter alia: (1) M.S. stated in his 911 call that defendant threatened three employees and two customers but no customers have complained; (2) an employee whose name defendant first learned at trial (K.L.) told defendant he had the wrong battery and the employee could help defendant get the right one, which is why defendant dropped the battery; (3) AutoZone employees altered the video so it did not show defendant dropping the battery; (4) M.S. made false statements in the 911 call to trigger a rapid police response and then testified that defendant threatened to shoot and had a gun, but none of this is mentioned in the 911 call; (5) given the threats of harm M.S. and D.H. claim, they did not follow store policy to simply report theft and came out of the store with weapons (M.S. with a hammer and D.H. with a pipe); (6) D.H. testified falsely that he came out to defendant's truck to ask for the alternator

5

back, but he actually broke defendant's mirror; (7) because D.H. broke the mirror, defendant had to open his door to see that police were following him; (8) the recording of the 911 call and video surveillance, which "do not lie," show that AutoZone employees made false statements and defendant did not act violently or " 'yell' " that someone would get shot; and (9) there are three versions of defendant supposedly saying he would shoot someone.

" 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) Reversal on the ground of insufficiency of the evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331 (*Bolin*).)

We conclude there was sufficient evidence to convict defendant of robbery and making criminal threats.[3] Three percipient witnesses—M.S, D.H., and K.L.—testified that when defendant came into the store the third time, he said he would shoot people before taking a battery. All three were afraid that defendant had a gun. The testimony of a single witness can provide substantial evidence to support the verdict. (*People v. Jones*

---

[3] Defendant does not contend in his supplemental brief that insufficient evidence supported his conviction on count five for evading police.

(2013) 57 Cal.4th 899, 963 [" 'unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction' "].)

Defendant emphasizes that there were "three versions of me suppose" to " 'yell' that someone w[ould] get shot . . . ." To be sure, D.H. initially testified that defendant said he would shoot any person who tried to stop him but then testified defendant said, "I'm gonna shoot these motherfuckers." In subsequent questioning, D.H. disclaimed that he had heard defendant say he would shoot anyone who tried to stop him. K.L. also testified that defendant said that he was going to shoot up the place. But even if witnesses testified to conflicting versions of what defendant uttered—which we do not find to be the case here—we apply "the fundamental rule that 'when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, *contradicted or uncontradicted*, which will support the conclusion reached by the jury.' " (*People v. Bassett* (1968) 69 Cal.2d 122, 138, italics added; see *People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.)

Defendant also contends that defense counsel was ineffective. Defendant argues he told his counsel that another AutoZone employee whose name defendant did not learn until trial, who he identifies as K.L., would testify he told defendant he had the wrong battery and K.L. could help him get the right battery, which is why he dropped the first battery. Defendant told defense counsel that D.H. "smash[ed]" defendant's sideview mirror and counsel told the prosecutor, so that she was able to question D.H. so as to downplay his actions. Defendant further claims he stressed to defense counsel that he should obtain crime scene photos to show the damage to defendant's truck caused by M.S. and D.H.—M.S. with a hammer—when they came out of the store, which would undercut M.S.'s testimony that defendant threatened AutoZone employees and customers with harm. Defendant argues, "I would have made it known if [defense counsel] would have allowed me to take the stand on my behalf."

7

The record does not support defendant's claim.  When the People rested, the trial court engaged in the following colloquy with defendant:

"THE COURT:  So we are in session out of the presence of the jury and, Mr. McBurney [defense counsel], it's my understanding that after having spoken to you[r] client[,] he is choosing not to testify.

"MR. MCBURNEY:  Correct.

"THE COURT:  Is that correct, Mr. Jackson?

"THE DEFENDANT:  Yes, your Honor.

"THE COURT:  I do want to make sure that you understand that you have the right to choose to testify and the right to choose not to testify.  As you have already done it sounds like.  [¶]  You must—should and must consult with your attorney about this as I know you have.  But ultimately this is your personal decision.  I do want to make sure that you understand your rights and that is your decision not to testify; is that correct?

"THE DEFENDANT:  Yes, sir."

This exchange demonstrates that defendant knowingly and voluntarily chose not to testify.  We also note that "[d]efense counsel have no power to prevent their clients from testifying."  (See *People v. Lucas* (1995) 12 Cal.4th 415, 444 (*Lucas*).)

Further, "[t]actical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts.  [Citation.]  To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' "  (*Bolin, supra*, 18 Cal.4th at p. 333; see *Lucas, supra*, 12 Cal.4th at p. 437.)  Advising a client not to take the stand is a tactical decision that rarely supports an ineffective assistance claim.  (*Lucas, supra*, at p. 444; *People v. Trotter* (1984) 160 Cal.App.3d 1217, 1224-1225.)

In this instance, we can readily conceive of an explanation why defense counsel would advise defendant not to testify. Over defense counsel's objection, the trial court ruled that evidence of the three of defendant's prior convictions would be admissible in the jury trial as impeachment if defendant testified. Thus, were defendant to testify, the jury would learn that he had been convicted of three felonies to defendant's obvious prejudice. (See *People v. Burnett* (2003) 110 Cal.App.4th 868, 883-884.)

Having examined the record and considered the arguments in defendant's supplemental brief, we find no arguable error that would result in a disposition more favorable to defendant.

## III. DISPOSITION

The judgment is affirmed.


/S/

_____

RENNER, J.



We concur:


/S/

_____

DUARTE, Acting P. J.


/S/

_____

FEINBERG, J.


9